1  JOSEPH C. LIBURT (STATE BAR NO. 155507)
   jliburt@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
3  Menlo Park, California 94025
   Telephone:   (650) 614-7400
4  Facsimile:    (650) 614-7401

5  Attorneys for Defendants
   SEARS HOLDINGS MANAGEMENT
6  CORPORATION and SEARS, ROEBUCK AND CO.

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 JENNIFER LUCERO and RAFAEL          Case No. 3:14-cv-01620-AJB-WVG
   SOLORZANO, individually and on
12 behalf of all others similarly situated,   **NOTICE OF MOTION AND
                                              MOTION TO COMPEL
13              Plaintiffs,                    ARBITRATION AND STAY
                                              ACTION; MEMORANDUM OF
14        v.                                   POINT AND AUTHORITIES IN
                                              SUPPORT THEREOF**
15 SEARS HOLDINGS MANAGEMENT
   CORPORATION, a Delaware            Date:      September 18, 2014
16 Corporation; SEARS, ROEBUCK AND   Time:      2:00 p.m.
   CO., a New York Corporation; and   Dept.:     3B
17 DOES 1 through 50, inclusive,      Judge:     Anthony Battaglia

18              Defendants.

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ..................................................................................2

II.     ALLEGATIONS OF THE COMPLAINT .............................................2

III.    FACTS REGARDING ARBITRATION .................................................3

 A. Arbitration Agreement Implemented...........................................3

 B. Sears Employees Receive The Arbitration Agreement Via
  Training Portal..............................................................................4

 C. Plaintiffs Received, Acknowledged And Agreed To The
  Arbitration Agreement, And Did Not Opt Out ....................................5

 D. Plaintiffs' Claims Are Within The Scope Of The Arbitration
  Agreement .....................................................................................6

 E. Plaintiffs Have Refused Defendants' Request To Arbitrate................7

IV.     THE COURT MUST COMPEL ARBITRATION .....................................7

 A. The FAA And U.S. Supreme Court Provide For Enforcement Of
  Agreements To Arbitrate ...............................................................7

 B. This Court Has Already Found The Arbitration Agreement
  Enforceable.....................................................................................9

 C. The Parties Agreed To Arbitrate Their Claims And Therefore
  The Arbitration Agreement Must Be Enforced ...................................9

  1. The Parties Entered Into A Valid Agreement..........................10

  2. Plaintiffs' Claims Are Within The Scope Of The
   Arbitration Agreement ...........................................................11

  3. Plaintiffs Must Arbitrate Their Claims On An Individual,
   Not A Class, Basis ..................................................................11

  4. The Arbitration Agreement Is Not Unconscionable ...............12

 D. Any Argument That The Arbitration Agreement Is
  Unenforceable Pursuant To Armendariz Is Meritless In Light Of
  Concepcion.....................................................................................13

  1. Armendariz Is No Longer Good Law.....................................13

  2. In Any Event, The Arbitration Agreement Complies With
   The Armendariz Requirements ...............................................15

   a. The Arbitration Agreement Requires The Use Of A
    Neutral Arbitrator ........................................................15

   b. The Arbitration Agreement Provides For Adequate
    Discovery.......................................................................16

   c. The Arbitration Agreement Provides For A Written
    Award...........................................................................18

   d. Plaintiffs Will Not Be Required To Pay
    Unreasonable Costs Or Arbitrator Fees.........................18

- i -

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-CV-01620-AJB-WVG]

1

**TABLE OF CONTENTS**
(continued)

**Page**

2

3      e.      The Arbitration Agreement Provides For All Types
               Of Relief Otherwise Available To Plaintiffs ................19

4   E.    Plaintiffs Must Arbitrate Their Claims On An Individual Basis ........20

5      If Plaintiffs attempt to avoid individual arbitration on the ground
       that the class waiver they agreed is not enforceable, such

6      an argument must fail..............................................................20

7      1.   Class Action Waivers Are Enforceable ...................20

8      2.   Waivers of PAGA Representative Claims Are
            Enforceable.....................................................21

9   V.   THIS ACTION MUST BE STAYED PENDING RESOLUTION OF
         THE ARBITRATION.....................................................23

10  VI.  CONCLUSION .........................................................23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### Federal Cases

4

*Appelbaum v. AutoNation Inc.*,
  No. SACV 13-01927 JVS(RNBx), 2014 U.S. Dist. LEXIS 50588
  (C.D. Cal. Apr. 8, 2014).........................................................................................22

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ..................................................................................*passim*

*Burnett v. Macy's West Stores, Inc.*,
  No. 1:11-cv-01277LJO SMS, 2011 WL 4770614 (E.D. Cal. Oct. 7, 2011) .....15

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002)..............................................................................13

*Coleman v. Jenny Craig, Inc.*,
  11CV1301-MMA DHB, 2012 WL 3140299 (S.D. Cal. May 15, 2012) ...........22

*CompuCredit Corp. v. Greenwood*,
  132 S. Ct. 665 (2012).....................................................................................21, 22

*Cox v. Ocean View Hotel Corp.*,
  533 F.3d 1114 (9th Cir. 2008)..............................................................................10

*Grabowski v. C.H. Robinson Co.*,
  817 F. Supp. 2d 1159 (S.D. Cal. 2011) ................................................................22

*U.S. ex rel. Hall v. Teledyne Wah Chang Albany*,
  104 F.3d 230 (9th Cir. 1997)................................................................................21

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003)..............................................................................10

*Kilgore v. KeyBank, N.A.*,
  673 F.3d 947 (9th Cir. 2011).................................................................................13

*Kilgore v. Keybank Nat'l Assoc.*,
  718 F.3d 1052 (9th Cir. 2013) (*en banc*)......................................................*passim*

*Luchini v. Carmax, Inc.*,
  CV F 12-0417 LJO DLB, 2012 WL 2995483 (E.D. Cal. July 23, 2012) ..........22

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Miguel v. JPMorgan Chase Bank, N.A.*,

4

CV 12-3308 PSG PLAX, 2013 WL 452418 (C.D. Cal. Feb. 5, 2013)..............22

5

*Morvant v. P.F. Chang's China Bistro, Inc.*,

6

870 F. Supp. 2d 831 (N.D. Cal. 2012).............................................................22

7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

8

460 U.S. 1 (1983)...................................................................................8, 10, 11

9

*Nelson v. AT&T Mobility*,

10

No. C10-4802, 2011 U.S. Dist. LEXIS 92290 (N.D. Cal. Aug. 18, 2011)........22

11

*Oguejiofor v. Nissan*,

No. C-11-0544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2, 2011) ...............15

12

*Perry v. Thomas*,

13

482 U.S. 483 (1987)...........................................................................................8

14

*Quevedo v. Macy's, Inc.*,

15

798 F. Supp. 2d 1122 (C.D. Cal. 2011) .....................................................21, 22

16

*Rent-A-Center, West, Inc. v. Jackson*,

17

561 U.S. 63 (2010)...........................................................................................10

18

*Ruhe v. Masimo Corp.*,

No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011)

19

............................................................................................................15

20

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,

21

559 U.S. 662 (2010)...........................................................................................8

22

*Valle v. Lowe's HIW, Inc.*,

23

No. 11-1489 SC, 2011 U.S. Dist. LEXIS 93639 (N.D. Cal. Aug. 22, 2011).....22

24

*Velazquez v. Sears*,

No. 13cv680-WQH-DHB, 2013 U.S. Dist. LEXIS 121400

25

(S.D. Cal. Aug. 26, 2013) .................................................................9, 13, 22

26

*Velazquez v. Sears*,

27

No. 13cv680-WQH-DHB, 2013 WL 4525581 (S.D. Cal. Aug. 26, 2013)......2, 9

28

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE No.3:14-cv-01620-AJB-WVG]

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Williams v. Am. Specialty Health Group, Inc.,*
    No. 12-CV-3072-IEG(BLM), 2013 WL 1629213 (S.D. Cal. Apr. 16, 2013)...16, 18, 20

### State Cases

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000) ................................................................*passim*

*Craig v. Brown & Root, Inc.,*
    84 Cal. App. 4th 416 (2000)..........................................................11

*DLSE v. Transpacific Trans. Co.,*
    69 Cal. App. 3d 268 (1977).........................................................11

*Iskanian v. CLS Transportation Los Angeles, LLC,*
    59 Cal. 4th 348, 173 Cal. Rptr. 3d 289 (2014)............................21, 22

*Kinney v. United HealthCare Servs., Inc.,*
    70 Cal. App. 4th 1322 (1999)......................................................19, 20

### Federal Statutes

9 U.S.C. § 2 ...............................................................................8, 12

9 U.S.C. § 3 ...............................................................................2, 8, 23

### State Statutes

Cal.Labor Code § 229 ...................................................................8

Cal. Labor Code § 17200 ...............................................................3, 7, 11

PAGA ......................................................................................*passim*

### Other Authorities

JAMS Employment Arbitration Rules & Procedures effective July 15, 2009
    ("JAMS Rules").......................................................................16-20

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE No.3:14-cv-01620-AJB-WVG]

**TO: PLAINTIFFS JENNIFER LUCERO AND RAFAEL SOLORZANO AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 18, 2014 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Anthony Battaglia, in Courtroom 3B of the United States District Court for the Southern District of California, 221 West Broadway, San Diego, California, Defendants Sears Holdings Management Corporation and Sears, Roebuck and Co. will and hereby do move the Court for an order compelling Plaintiffs to neutral and binding individual arbitration and staying the action pending the outcome of the arbitration. The motion is based on this notice of motion, the Declarations of Roberta Kaselitz and Joseph C. Liburt, the following Memorandum of Points and Authorities, the complete files and records in this action, any reply papers Defendants may file, any matters of which the Court takes judicial notice, and such materials or argument as may be presented to the Court in conjunction with the hearing on this motion.

Dated:  July 29, 2014

JOSEPH C. LIBURT
Orrick, Herrington & Sutcliffe LLP


By: s/ Joseph C. Liburt
JOSEPH C. LIBURT
Attorneys for Defendants

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-CV-01620-AJB-WVG]

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.     INTRODUCTION**

3        Defendants Sears Holdings Management Corporation and Sears, Roebuck

4    and Co. ("Sears") seek to compel Plaintiffs Jennifer Lucero and Rafael Solorzano to

5    arbitrate their claims, all of which relate to their employment with Sears.  Each

6    Plaintiff is a party to a valid and binding arbitration agreement in which all parties

7    expressly agreed that matters arising out of Plaintiffs' employment shall be resolved

8    on an individual basis through neutral and binding arbitration.  This Court recently

9    rejected challenges to and enforced the same arbitration agreement in *Velazquez v.*

10   *Sears*, No. 13cv680-WQH-DHB, 2013 WL 4525581 (S.D. Cal. Aug. 26, 2013).

11       Plaintiffs expressly agreed to abide by the terms of the arbitration agreement,

12   and declined to exercise their right  to opt out of that agreement.  Accordingly, they

13   are now precluded from bringing this putative class and representative action

14   against Defendants.  Defendants request that the Court: (1) compel the individual

15   arbitration of Plaintiffs' claims; and (2) stay this litigation as required by the

16   Federal Arbitration Act ("FAA"), or administratively close the case.

17   **II.    ALLEGATIONS OF THE COMPLAINT**

18       On January 29, 2014, Plaintiffs, individually and purportedly on behalf of all

19   others similarly situated, filed a Complaint in the Superior Court of California for

20   the County of San Diego, entitled "JENNIFER LUCERO and RAFAEL

21   SOLORZANO, individuals, on behalf of themselves, and on behalf of all persons

22   similarly situated, vs. SEARS HOLDINGS MANAGEMENT CORPORATION, a

23   Corporation; SEARS, ROEBUCK & CO., a Corporation; and DOES 1 through 50,

24   inclusive;" (the "Action").  Plaintiffs filed their First Amended Complaint ("FAC")

25   on June 3, 2014.

26       The FAC purports to assert five class-wide claims for relief against

27   Defendants based upon Plaintiffs' employment with Sears.  Specifically, the FAC

28   asserts claims for: (i) unfair competition in violation of Labor Code Section 17200;

OHSUSA:753559501.1

- 2 -

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-cv-01620-AJB-WVG]

1   (ii) failure to pay overtime compensation; (iii) failure to provide accurate itemized

2   wage statements; (iv) failure to provide wages when due; and (v) a representative

3   action under the California Private Attorney General Act ("PAGA").  Plaintiffs

4   seek relief in the form of alleged restitution, wages, penalties under the Labor Code

5   and Industrial Welfare Commission ("IWC") Orders, injunctive relief, declaratory

6   relief, and costs associated with this action.

7         On July 7, 2014, Sears answered the FAC in state court.   On July 8, 2014,

8   Sears removed this Action.   The parties have not yet served initial disclosures or

9   engaged in any discovery, and have not yet had the Rule 26(f) conference with the

10  Court.

11  **III.   FACTS REGARDING ARBITRATION**

12       **A.   Arbitration Agreement Implemented**

13        During the week of April 2, 2012, Defendants introduced an arbitration

14  policy/agreement ("Agreement") under which participating employees and

15  Defendants each waive the right to pursue employment-related claims in court, and

16  agree instead to submit such disputes to binding arbitration.  *See* Declaration of

17  Roberta Kaselitz ("Kaselitz Decl."), ¶ 5.

18        The Agreement states, in pertinent part:

19
20            Under this Agreement, and subject to certain exceptions
             specified within the Agreement, all employment-related
21           disputes between you ("Associate") and Company that are
             not resolved informally shall be resolved by binding
             arbitration in accordance with the terms set forth below.
22           This Agreement applies equally to disputes related to
             Associate's employment raised by either Associate or by
23           Company.

24           **Accordingly, Associate should read this Agreement
             carefully, as it provides that virtually any dispute
25           related to Associate's employment must be resolved
             only through binding arbitration.   Arbitration
26           replaces the right of both parties to go to court,
             including the right to have a jury decide the parties'
27           claims.**

28                    *          *          *

OHSUSA:753559501.1

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-cv-01620-AJB-WVG]

**If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

*Id.* at Exhibit A, "Introduction" (emphasis in original).

Regarding the types of claims covered under the Agreement, the Agreement expressly states that it applies to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment. . ." *Id.*

**B.    Sears Employees Receive The Arbitration Agreement Via Training Portal**

Prior to September 14, 2012, employees participated in annual training and acknowledged their receipt of various employment policies using both Sears' "My Personal Information" ("MPI") portal and the former training system known as the "Online Performance Training System." *Id.* at ¶ 6. Employees log into the MPI portal using a unique Enterprise ID and Password. *Id.* at ¶ 7. Once logged into the MPI portal, employees may print any documents or pages viewed in the portal, using Sears-owned equipment and supplies and at no cost to the employee. *Id.* at ¶ 8.

Also, prior to September 14, 2012, employees were required to complete a series of policy acknowledgements in the MPI portal. These acknowledgements were completed on the "SHC Policy Acknowledgements" page. *Id.* at ¶ 9. Prior to acknowledging the receipt and review of the Agreement, the link to this Agreement appears in red colored font on the SHC Policy Acknowledgements page. *Id.* at ¶ 10. Upon clicking the link for the Agreement acknowledgement, the employee is brought to a page containing four additional links, labeled (i)

1   "Arbitration Policy/Agreement (PDF)"; (ii) "Arbitration Policy/Agreement (Text)";

2   (iii) "Opt Out form Action is required to protect your legal rights to sue the

3   Company in court and/or to participate in any way in a class action, collective

4   action or representative action"; and (iv) "Acknowledgement receipt of the

5   Arbitration Policy/Agreement". *Id.* at ¶ 11.   After reviewing the Agreement and

6   Opt Out form, employees are asked to acknowledge their receipt of the Agreement

7   by clicking on the "Acknowledge receipt of the Arbitration Policy/Agreement" link.

8   *Id.* at ¶ 12.  Upon clicking on the acknowledgement link, the employee receives the

9   following message:

10
11
12
13

> **By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement.  I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.**

14   *Id.* at ¶ 13 (emphasis in original).

15       To submit their acknowledgement, employees are required to click the "Yes"

16   button and then click "Submit." *Id.* at ¶ 14.  Once an employee completes the

17   acknowledgement in the MPI portal, the PeopleSoft Human Resources

18   Management System is automatically updated to reflect the employee's receipt and

19   acknowledgement of the Agreement. *See* Kaselitz Decl., ¶ 15.  Following their

20   acceptance of the Agreement, employees are provided with a 30-day window to opt

21   out of the Agreement. *Id.* at ¶ 16.  An employee who timely chooses to opt out of

22   the Agreement may do so by mailing or faxing the properly completed Opt Out

23   form to the address and/or fax number listed on the form. *Id.* at ¶ 17.  Similarly, if

24   an employee opts out of the Agreement, the PeopleSoft system is updated to reflect

25   this decision. *Id.* at ¶ 18.

26   **C.   Plaintiffs Received, Acknowledged And Agreed To The Arbitration Agreement, And Did Not Opt Out**

27

28   Sears hired Plaintiff Lucero on January 23, 2012, and Sears hired Plaintiff

- 5 -

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-CV-01620-AJB-WVG]

OHSUSA:753559501.1

Solorzano on September 18, 2000.  *Id*. at ¶ 19.  Both Plaintiffs received the Agreement as part of the 2012 launch of the new Agreement in the week of April 2, 2012.  *Id.* at ¶ 20.  On April 11, 2012, Plaintiff Lucero acknowledged receipt of the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgement page.  *Id.* at ¶ 21.  Plaintiff Solorzano likewise acknowledged receipt of the Agreement on April 26, 2012. *Id.* at ¶ 22.  Plaintiffs' individual acknowledgments are reflected on their respective Review Training Summary in the PeopleSoft Human Resources Management System.  *Id*. at ¶ 23, <u>Exhibit C</u> (regarding Plaintiff Lucero) and ¶ 24, <u>Exhibit D</u> (regarding Plaintiff Solorzano).[1]

Following Plaintiffs' individual review and acceptance of the Agreement, each had a 30-day window during which he or she could revoke his or her acceptance of the Agreement.  *Id.* at ¶ 25; Exhibit A.   Neither Plaintiff Lucero nor Plaintiff Solorzano revoked his or her acceptance of the Agreement within the 30-day window (nor did either attempt to do so any time thereafter).  *Id.* at ¶ 26.   Had either Plaintiff chosen to opt out of the Agreement, the decision would be reflected in his or her PeopleSoft profile as follows:

> "Course Title:  Arbitration Policy/Agreement"
>  . . .
> "Attendance:   Opt-Out"

*Id.,* <u>Exhibit E</u>.

As Plaintiffs did not opt out of the Agreement, their PeopleSoft profiles reflect only that they acknowledged receipt of the Agreement and did not opt out.

**D.   <u>Plaintiffs' Claims Are Within The Scope Of The Arbitration Agreement</u>**

The Agreement provides:

> Except as it otherwise provides, this Agreement applies, without limitation, to disputes regarding the employment relationship,

---

[1]  The "Start Date" of February 3, 2012 indicates the date the Arbitration Policy/Agreement "Course" was created in the PeopleSoft system.   The "End Date" column reflects the date each Plaintiff acknowledged the Agreement.  *Id*.

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-cv-01620-AJB-WVG]

trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, as amended, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement and Income Security Act, Genetic Information Non-Disclosure Act, and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims ("Covered Claims").

*See* Kaselitz Decl., Exhibit A, ¶ 1.

Here, Plaintiffs assert the following causes of action: (i) unfair competition in violation of Labor Code Section 17200; (ii) failure to pay overtime compensation; (iii) failure to provide accurate itemized wage statements; (iv) failure to provide wages when due; and (v) penalties under the PAGA.  Each of Plaintiffs' claims is a Covered Claim and is not excluded (*see* Exhibit A, ¶ 2), and thus within the scope of the Agreement.

### E.    Plaintiffs Have Refused Defendants' Request To Arbitrate

Defendants' counsel provided Plaintiffs' counsel with the Agreement and asked Plaintiffs to stipulate to individual arbitration.  Plaintiffs refused.  *See* Declaration of Joseph C. Liburt in Support of Motion to Compel Arbitration, ¶ 2.

## IV.    THE COURT MUST COMPEL ARBITRATION

### A.    The FAA And U.S. Supreme Court Provide For Enforcement Of Agreements To Arbitrate

The FAA "was enacted . . . in response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted).  The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms."  *Id.* at 1748 (internal quotes and citations omitted).   The Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *Id.* at 1745.

This purpose is readily apparent from the FAA's text.   Section 2 makes

1   arbitration agreements "valid, irrevocable, and enforceable" as written (subject to a

2   savings clause); section 3 requires courts, at a party's request, to stay litigation of

3   arbitral claims pending arbitration of those claims "in accordance with the terms of

4   the agreement"; and section 4 requires courts to compel arbitration "in accordance

5   with the terms of the agreement" upon the motion of either party to the agreement.

6       Because arbitration is a highly favored means of settling disputes, the United

7   States Supreme Court has held that arbitration agreements "must be rigorously

8   enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (arbitration agreement

9   upheld and arbitration compelled for claim for unpaid wages under California

10  Labor Code section 229). Indeed, in *Moses H. Cone Mem'l Hosp. v. Mercury*

11  *Constr. Corp.*, 460 U.S. 1 (1983), the Supreme Court declared:

12      The Arbitration Act establishes that, as a matter of federal law, any
        doubts concerning the scope of arbitrable issues should be resolved in
13      favor of arbitration, whether the problem at hand is the construction of
        the contract language itself or an allegation of waiver, delay or like
14      defense to arbitrability.
15

16  *Id.* at 24-25.

17      Most recently, the Supreme Court vigorously emphasized that the FAA

18  embodies "a liberal federal policy favoring arbitration agreements, notwithstanding

19  any state substantive or procedural policies to the contrary." *Concepcion*, 131 S.

20  Ct. at 1749 (quoting *Moses H. Cone*, 460 U.S. at 24); *see also Stolt-Nielsen, S.A. v.*

21  *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("Whether enforcing an

22  agreement to arbitrate or construing an arbitration clause, courts and arbitrators

23  must give effect to the contractual rights and expectations of the parties. In this

24  endeavor, as with any other contract, the parties' intentions control.") (internal

25  quotes and citations omitted). This principle was recently reinforced by the Ninth

26  Circuit in *Kilgore v. Keybank Nat'l Assoc.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (*en*

27  *banc*) ("The FAA was intended to 'overcome an anachronistic judicial hostility to

28  agreements to arbitrate'... that resulted in 'courts' refusals to enforce agreements to

arbitrate'") (citations omitted).  Accordingly, state law rules hostile to arbitration agreements are preempted by the FAA (including, in *Concepcion*, a California rule that class action waivers in arbitration agreements in certain consumer contracts of adhesion are unconscionable).  *Concepcion*, 131 S. Ct. at 1747-48.

**B.** **This Court Has Already Found The Arbitration Agreement Enforceable**

This Court has already reviewed the Arbitration Agreement at issue and found it enforceable.  *See Velazquez v. Sears*, No. 13cv680-WQH-DHB, 2013 U.S. Dist. LEXIS 121400 (S.D. Cal. Aug. 26, 2013).  In *Velazquez*, plaintiff asserted four class claims for relief based upon Plaintiff's employment with Sears: (i) failure to pay minimum wages; (ii) failure to provide accurate statements and maintain required records; (iii) failure to pay all wages due to discharged or quitting employees; and (iv) unlawful business practices.  After removing the case, Sears moved to compel the individual arbitration of Velazquez's claims.  Velazquez opposed arbitration arguing that the Agreement was unconscionable.  The District Court rejected plaintiff's arguments, held the Agreement enforceable, stayed the action pending the outcome of individual arbitration, and administratively closed the case.

Not only was the Arbitration Agreement in *Velazquez* identical to the one here, but so was the review and acknowledgment procedure utilized.  *See id.* at *6 (Velazquez received and acknowledged the Agreement in April 2012 and did not revoke her acceptance within the 30-day timeframe ).   This Court should similarly find the same Agreement enforceable.

**C.** **The Parties Agreed To Arbitrate Their Claims And Therefore The Arbitration Agreement Must Be Enforced**

The only prerequisite for a court to order arbitration is for the Court to determine whether the parties have entered into a valid agreement to arbitrate the dispute.  *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [CASE NO.3:14-cv-01620-AJB-WVG]

1  ("[t]he FAA limits courts' involvement to determining (1) whether a valid

2  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses

3  the dispute at issue.") (internal citations omitted);  *Kilgore*, 718 F.3d at 1058 ("The

4  FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration

5  on issues as to which an arbitration agreement has been signed.'") (emphasis in

6  original).  The FAA "places arbitration agreements on an equal footing with other

7  contracts, and requires courts to enforce them according to their terms."  *Rent-A-*

8  *Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).

9  Courts resolve doubts on questions of arbitrability in favor of arbitration.  *Moses H.*

10  *Cone,* 460 U.S. at 24-25.

11        Here, the Agreement expressly provides that "[f]ailure to opt out within the

12  30-day period will demonstrate Associate's intention to be bound by this

13  Agreement and Associate's agreement to arbitrate all disputes arising out of or

14  related to Associate's employment as set forth below."  Plaintiffs reviewed and

15  agreed to the arbitration Agreement and chose not to opt out of it, thereby agreeing

16  to be bound by its terms, including the requirement that all claims be submitted to

17  binding individual arbitration.  The Agreement is valid and includes within its

18  scope the claims Plaintiffs assert.  Accordingly, this Court must order the parties to

19  arbitrate their disputes.

20                **1.     The Parties Entered Into A Valid Agreement**

21        For the "validity" inquiry, courts generally apply ordinary state law contract

22  principles.  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

23  Under California law, a contract is valid if there is mutual assent between the

24  parties and valid consideration.  *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416,

25  420 (2000) (noting that general contract law principles determine whether an

26  arbitration agreement is binding); *see also DLSE v. Transpacific Trans. Co.*, 69 Cal.

27  App. 3d 268, 274-75 (1977) (stating mutual assent and consideration as the

28  elements of a valid contract).

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-cv-01620-AJB-WVG]

The Agreement here meets these validity requirements.  Plaintiffs' review and agreement to the Agreement, coupled with their failure to return the Opt-Out form, signifies each Plaintiff's assent to the Agreement.  Defendants gave valid consideration for each Plaintiff's agreement to arbitrate by agreeing to arbitrate any claims Defendants may have against either Plaintiff.  Accordingly, the Agreement is valid.

## 2. <u>Plaintiffs' Claims Are Within The Scope Of The Arbitration Agreement</u>

The Agreement expressly informs employees that the policy covers "**virtually any dispute related to Associate's employment,**" including "disputes regarding the employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment. . ."  *See* Kaselitz Decl., Exhibit A, ¶ 1.  All of Plaintiffs' asserted claims pertain to their contention that they were misclassified as exempt, including their claims for: (i) unfair competition in violation of Labor Code Section 17200; (ii) failure to pay overtime compensation; (iii) failure to provide accurate itemized wage statements; (iv) failure to provide wages when due; and (v) penalties under the PAGA.  "[Any] doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25.  Here, there is no doubt that Plaintiffs' claims all arise out of their employment with Sears and thus all fall within the scope of the Agreement.

## 3. <u>Plaintiffs Must Arbitrate Their Claims On An Individual, Not A Class, Basis</u>

As the Supreme Court stated recently, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms."  *Concepcion*, 131 S. Ct. at 1748 (internal quotes and citations omitted).  Here, one of the terms of the Agreement is that all claims shall be arbitrated on an individual basis, and the Agreement explicitly prohibits any class arbitration.  *See*

1  Kaselitz Decl., Exhibit A.  Accordingly, the Court must order Plaintiffs to arbitrate
2  the Action on an individual, non-class basis.

### 4.    The Arbitration Agreement Is Not Unconscionable

4      Plaintiffs may argue that despite the existence of a valid Agreement that
5  covers their claims, the Agreement should not be enforced because it is
6  unconscionable under the FAA's savings clause.   This argument would fail.

7      The FAA includes a savings clause that allows arbitration agreements to be
8  invalidated only "upon such grounds as exist at law or in equity for revocation of
9  any contract."  9 U.S.C. § 2; *Kilgore,* 718 F.3d at 1058.

10     The savings clause preserves generally applicable contract defenses such as
11  unconscionability, so long as those doctrines are not 'applied in a fashion that
12  disfavors arbitration." *Concepcion*, 131 S. Ct. at 1748.  Under California law,
13  unconscionability has both a procedural and a substantive element, the former
14  focusing on oppression or surprise, the latter on overly harsh or one-sided results.
15  *Kilgore,* 718 F.3d at 1059.  In analyzing these two elements, courts use a sliding
16  scale approach.  "The more substantively oppressive the contract term, the less
17  evidence of procedural unconscionability is required to come to the conclusion and
18  vice versa." *Id.* at 1058.  No matter how heavily one side of the scale tips,
19  however, *both* procedural and substantive unconscionability are required for a court
20  to hold an arbitration agreement unenforceable.   *Id.*

21     In *Kilgore*, the Ninth Circuit recently upheld an arbitration agreement against
22  a challenge based on unconscionability grounds where the agreement contained an
23  "opt-out provision and a conspicuous and comprehensive explanation of the
24  arbitration agreement [and] Plaintiffs did not reject that agreement." *Kilgore v.*
25  *KeyBank, N.A.*, 673 F.3d 947, 964 (9th Cir. 2011), *vacated, reh'g en banc*, 718 F.3d
26  1052 (9th Cir. 2013) (on rehearing, the Ninth Circuit upheld the arbitration
27  agreement and compelled arbitration on an individual basis); *see also Circuit City*
28  *Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-2000 (9th Cir. 2002) (compelling

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-cv-01620-AJB-WVG]

arbitration and finding dispositive that the plaintiff had a 30 day opportunity to opt-out of the arbitration program by mailing in an opt-out form).

Similarly here, Defendants' Agreement allowed Plaintiffs 30 days to opt-out of the Agreement by signing and returning the Opt-Out form.  Additionally, the Agreement bears other striking similarities to the arbitration agreement upheld in *Ahmed*.  Specifically, the Agreement: (1) is located in a separately titled section of the overall document; (2) expressly discloses that the Associates are giving up specified rights by not opting-out; (3) includes bold cautionary [emboldened] language set off from the rest of the document; and (4) instructs the Associates to read through the Agreement before signing it. *See Ahmed*, 283 F.3d at 1199-1200. *See also  Velazquez*, 2013 U.S. Dist. LEXIS 121400, at *18 (finding the agreement not unconscionable and that Plaintiff had a "meaningful opportunity to opt out of the arbitration provision when signing the agreement . . . and that the option to opt-out was not buried in fine print …, but was instead …, clearly labeled, in boldface.") (internal quotations and citations omitted).  Therefore, Defendants' Agreement is valid and enforceable.

### D.  Any Argument That The Arbitration Agreement Is Unenforceable Pursuant To *Armendariz* Is Meritless In Light Of *Concepcion*

Plaintiffs may also challenge the validity of the Agreement under California law by arguing that it is unenforceable because it does not satisfy the additional requirements identified in *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 90 (2000).  Any such challenge will be meritless, both because *Armendariz* is no longer good law, and even if it is, the Agreement complies with it.

### 1.  *Armendariz* Is No Longer Good Law

Before *Concepcion,* the California Supreme Court addressed the issue of "the validity of a mandatory employment arbitration agreement, *i.e.*, an agreement to arbitrate wrongful termination or employment discrimination claims rather than filing suit in court, which an employer imposes on a prospective or current

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [CASE No.3:14-cv-01620-AJB-WVG]

1 | employee as a condition of employment." *Armendariz,* 24 Cal. 4th at 90.  The

2 | *Armendariz* Court held:

> We conclude that such claims are arbitrable if the arbitration permits an employee to vindicate his or her statutory rights . . . [I]n order for such vindication to occur, the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration.

*Id.* at 90-91, 102.

In light of *Concepcion,* however, the *Armendariz* requirements are no longer enforceable.  *See Kilgore*, 718 F.3d at 1058 (holding that *Concepcion* reemphasized that the savings clause permits agreements to arbitrate to be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,'" but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.).  The *Concepcion* Court specifically recognized that state procedural requirements that disfavor arbitration and are contrary to the FAA are preempted, and in doing so struck down California's "*Discover Bank*" rule that prohibited class-action waivers in arbitration agreements in certain consumer adhesion contracts.  The *Discover Bank* rule was created to address the concern "that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." *Concepcion*, 131 S.Ct. at 1752.  The Court, however, held that no matter how desirable this concern, such a rule would be an "obstacle to the accomplishment and execution of the full purposes and objectives of the [FAA]." *Id.* ("[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons").

Similarly here, the *Armendariz* requirements disfavor arbitration, *only* apply to arbitration agreements, are contrary to the FAA, and are therefore preempted. Similar to the *Discover Bank* rule at issue in *Concepcion*, the *Armendariz*

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [CASE NO.3:14-CV-01620-AJB-WVG]

requirements were created to address the concern that arbitration agreements improperly effectuate the waiver of certain unwaivable statutory rights.  But no matter how important a court may find this concern, such a rule would be an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA.

Indeed several courts have called *Armendariz* into question in light of *Concepcion.  See Oguejiofor v. Nissan*, No. C-11-0544 EMC, 2011 WL 3879482, at *3 (N.D. Cal. Sept. 2, 2011) (compelling arbitration; noting that *Armendariz* was abrogated in part by *Concepcion*); *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790, at *2 (C.D. Cal. Sept. 16, 2011) (compelling arbitration; "The parties dispute whether *Armendariz* merely creates a test for the general contract doctrine of unconscionability, or provides a separate set of 'requirements[.']  If *Armendariz* does the latter, such a requirement would appear to be preempted by the FAA under the Supreme Court's reasoning in *Concepcion*."); *Burnett v. Macy's West Stores, Inc.*, No. 1:11-cv-01277LJO SMS, 2011 WL 4770614, at *4 n. 3 (E.D. Cal. Oct. 7, 2011) (compelling arbitration; noting that "[a] few courts have questioned the vitality of the [*Armendariz*] requirements in light of the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*").

### 2.    In Any Event, The Arbitration Agreement Complies With The *Armendariz* Requirements

Even assuming that the *Armendariz* requirements are still valid, the Agreement complies with the requirements of *Armendariz* and is enforceable.

### a.    The Arbitration Agreement Requires The Use Of A Neutral Arbitrator

The Agreement complies with *Armendariz'* requirements to provide for the selection of neutral arbitrators.  *See* Kaselitz Decl., Exhibit A, § 6(a).   The Agreement states that, unless Defendants and the employee mutually-agree

otherwise, the arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presides in the jurisdiction where the arbitration will be conducted.  *Id.*  The Agreement further provides that the location of the arbitration proceeding shall be no more than 45 miles from the unit where the employee last worked for Sears, unless each party otherwise agrees in writing.  *Id.*

Should the parties be unable to agree upon an arbitrator within 30 days of service of the arbitration demand, Defendants will file, on behalf of all parties, an initiating party's demand with JAMS.  *Id.* at § 6(b).

The JAMS Rules also satisfy the *Armendariz* requirements with regard to the mutual selection of the arbitrator.  *Williams v. Am. Specialty Health Group, Inc.*, No. 12-CV-3072-IEG(BLM), 2013 WL 1629213, at *2 (S.D. Cal. Apr. 16, 2013) ("selection of a neutral arbitrator under the agreement requires participation by both [parties] pursuant to well-known and widely-endorsed JAMS procedure.").

Specifically, the JAMS Rules provide that JAMS shall appoint an arbitrator who shall act under the Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement.  *Id.*  Again, the location of the arbitration proceeding shall be no more than 45 miles from the unit where the employee last worked for Sears, unless each party otherwise agrees in writing.  *Id.*

Accordingly, the Agreement satisfies the *Armendariz* requirement for the selection of a neutral arbitrator.

**b.  The Arbitration Agreement Provides For Adequate Discovery**

The Agreement also provides for adequate discovery.   The parties have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses.  *See* Kaselitz Decl., Exhibit A, § 7.  Any discovery disputes shall be resolved by the arbitrator, provided, however, that to the extent discovery and presentation of witnesses and

1  evidence would be limited or unavailable under applicable law if the dispute were

2  brought in court, such limitations shall also apply in arbitration.  *Id.*

3      If the arbitration is being administered by JAMS, the arbitration shall be

4  conducted according to <u>JAMS Employment Arbitration Rules & Procedures</u>

5  <u>effective July 15, 2009</u> ("JAMS Rules").  *Id*.  According to the JAMS Rules, the

6  parties shall cooperate in good faith in the voluntary and informal exchange of all

7  non-privileged documents and other information, including electronically stored

8  information relevant to the dispute or claim immediately after commencement of

9  the arbitration.   See JAMS R. 17(a).  The parties shall complete an initial exchange

10  of all relevant, non-privileged documents, including, without limitation, copies of

11  all documents in their possession or control on which they rely in support of their

12  positions, names of individuals whom they may call as witnesses at the Arbitration

13  Hearing, and names of all experts who may be called to testify at the Arbitration

14  Hearing, together with each expert's report that may be introduced at the Arbitration

15  Hearing, within twenty-one (21) calendar days after all pleadings or notice of

16  claims have been received.  *Id*.  The arbitrator may modify these obligations at the

17  Preliminary Conference.

18      The JAMS Rules also state that each party may take at least one deposition of

19  an opposing party or an individual under the control of the opposing party.  *Id*. at R.

20  17(b).  The parties shall attempt to agree on the number, time, location, and

21  duration of the deposition(s).  *Id*.  Absent agreement, the arbitrator shall determine

22  these issues including whether to grant a request for additional depositions, based

23  upon the reasonable need for the requested information, the availability of other

24  discovery, and the burdensomeness of the request on the opposing parties and

25  witness.  *Id.*

26      The JAMS Rules further state that the parties shall promptly notify JAMS

27  when a dispute exists regarding discovery issues.  *Id*. at R. 17(d).  A conference

28  shall be arranged with the arbitrator, either by telephone or in person, and the

arbitrator shall decide the dispute.  *Id.*  With the written consent of all parties, and in accordance with an agreed written procedure, the arbitrator may appoint a special master to assist in resolving a discovery dispute.  *Id.*

Thus, the Agreement provides sufficient discovery for the parties to vindicate employment related claims, as required by *Armendariz.*

### c.    The Arbitration Agreement Provides For A Written Award

The Agreement satisfies the *Armendariz* requirement for a written award. The Agreement states that the arbitrator may award any party any remedy to which that party is entitled under applicable law, including an award of attorneys' fees, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the arbitrator.  *See* Kaselitz Decl., Exhibit A, § 8.  Within 30 days after submission of the parties' closing briefs or as soon as possible thereafter, the arbitrator shall issue a decision or award in writing, stating the essential finding of fact and conclusions of law.  *Id*.

Similarly, the JAMS Rules also provide for a written award, if the parties proceed through JAMS.  *See Williams,* 2013 WL 1629213 at *2 (JAMS procedure providing for a written award satisfies *Armendariz*).  JAMS Rule 24(a) provides that the arbitrator shall render a Final Award or a Partial Final Award within 30 days after the date of the close of the hearing, or, if a hearing has been waived, within 30 days after the arbitrator's receipt of all materials the parties specified.

Thus, the Agreement satisfies the *Armendariz* requirement for a written award.

### d.    Plaintiffs Will Not Be Required To Pay Unreasonable Costs Or  Arbitrator Fees

Under *Armendariz*, an employee cannot be required to pay "any type of expense that the employee would not be required to bear if he or she were free to

1    bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11.

2         Here, the Agreement does not require either Plaintiff to pay any unreasonable

3    costs or inappropriate fees.  In fact, the Agreement states, "[i]f applicable law

4    requires Company to pay the Arbitrator's fees, then Company will pay such fees;

5    otherwise, payment of fees shall be governed by the rules of the organization that

6    administers the arbitration.  Where the arbitration is conducted by an organization

7    or arbitrator that does not have rules pertaining to the payment of fees, the

8    Company shall pay the arbitrator's fees."   *See* Kaselitz Decl., Exhibit A, § 6(c).

9         The JAMS Rules similarly do not require the employee to pay any

10   unreasonable costs or inappropriate fees.   Pursuant to Rule 31(c), "[i]f an

11   arbitration is based on a clause or agreement that is required as a condition of

12   employment, the only fee that an employee may be required to pay is the initial

13   JAMS Case Management Fee."

14        Accordingly, the Agreement complies with *Armendariz* as to Plaintiffs'

15   financial costs associated with arbitration.

16       **e.    The Arbitration Agreement Provides For All Types Of**
                 **Relief Otherwise Available To Plaintiffs**
17

18        *Armendariz* also requires that all statutory remedies be available to the

19   parties.  *See Armendariz*, 24 Cal. 4th at 103, 119; *see also Kinney v. United*

20   *HealthCare Servs., Inc.* 70 Cal. App. 4th 1322, 1330 (1999).  Once again, to the

21   extent this requirement remains enforceable in light of *Concepcion*, the Agreement

22   satisfies it.  Indeed, Section 8 of the Agreement explicitly provides that:

23            The Arbitrator may award any party any remedy to which
              that party is entitled under applicable law, including an
24            award of attorneys' fees, but such remedies shall be
              limited to those that would be available to a party in his or
25            her individual capacity in a court of law for the claims
              presented to and decided by the Arbitrator. **No remedies**
26            **that otherwise would be available to an individual in a**
              **court of law will be forfeited by virtue of this**
27            **agreement.**

28

1   *Id.* (emphasis added).  The JAMS Rules similarly provide for all types of relief

2   otherwise available to a plaintiff.  *See Williams,* 2013 WL 1629213 at *2 (no

3   statutory remedies precluded under JAMS Rules).   Rule 24(c) states that "[t]he

4   Arbitrator may grant any remedy or relief that is just and equitable and within the

5   scope of the Parties' agreement, including but not limited to specific performance

6   of a contract or any other equitable or legal remedy."   In addition to a Final Award

7   or Partial Final Award, a JAMS arbitrator may also make other decisions, including

8   interim or partial rulings, orders and awards.  This *Armendariz* requirement is met.

9        Accordingly, Plaintiffs cannot show that the Agreement's procedures fail to

10  meet the *Armendariz* requirements.  To the contrary, the Agreement satisfies each

11  of the *Armendariz* requirements.  *See Williams,* 2013 WL 1629213 at *2 (finding

12  agreement to arbitrate under JAMS arbitration rules satisfied *Armendariz*

13  requirements).

14       **E.        Plaintiffs Must Arbitrate Their Claims On An Individual Basis**

15       If Plaintiffs attempt to avoid individual arbitration on the ground that the

16  class waiver they agreed is not enforceable, such an argument must fail.

17              **1.        Class Action Waivers Are Enforceable**

18       Plaintiff s may contend that the Agreement's class arbitration waiver is

19  unenforceable.  In light of *Concepcion* and the California Supreme Court's recent

20  decision in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 173

21  Cal. Rptr. 3d 289 (2014), such an argument is meritless.  In *Iskanian*, the California

22  Supreme Court recognized that its prior arbitration case law is inconsistent with

23  *Concepcion* and has, thus, been abrogated.  *See also Concepcion*, 131 S. Ct. at

24  1746-48, 1750 (state law rules such as those articulated in *Discover Bank* "stand as

25  an obstacle to the accomplishment of the FAA's objectives" and cannot be required

26  by states); *Kilgore*, 718 F.3d at 1052 (holding FAA overrides state law rules that

27  would otherwise exclude particular claims from arbitration).

28

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-CV-01620-AJB-WVG]

1

### 2.   Waivers of PAGA Representative Claims Are Enforceable

2   Plaintiffs will likely argue that PAGA waivers are unenforceable under

3   *Iskanian*.  This is incorrect for two reasons:  (1) *Iskanian* is wrong in holding that

4   PAGA claims are exempt from the FAA,[2] and thus that state law can prohibit the

5   enforcement of mandatory waivers of representative PAGA claims; and (2) even

6   were *Iskanian* correct, it does not apply to the Sears waiver because the Sears

7   waiver allows employees to opt out and is thus not mandatory.

8   First, *Iskanian* violates the fundamental rule the U.S. Supreme Court stated in

9   *Concepcion* and has reiterated thereafter:  "When state law prohibits outright the

10   arbitration of a particular type of claim, the analysis is straightforward:  The

11   conflicting rule is displaced by the FAA."  131 S.Ct. at 1747; *see CompuCredit*

12   *Corp. v. Greenwood*, 132 S.Ct. 665 (2012) (applying *Concepcion* rule to federal

13   statutory claims).  *Iskanian* purports to prohibit outright the mandatory arbitration

14   

---

15   [2]  It is impossible for PAGA to override the FAA because only Congress through *federal*

16   *legislation* can override the FAA's requirement that courts "enforce agreements to arbitrate according to their terms."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).  States have no power to preempt the FAA through state statutes.  *See id.* at 668 (holding that the FAA

17   compels enforcement of arbitration agreements according to their terms "unless the FAA's mandate has been 'overridden by a *contrary congressional command*.'") (emphasis added).

18   The California Supreme Court tries to avoid the FAA by interpreting it as applying only to

19   *private* disputes and characterizing PAGA claims as *public* disputes, and by asserting that *public* disputes are non-waivable.  Both prongs of this argument are erroneous.  First, to say that an

20   employee suing her employer under PAGA so as to obtain money for herself and other employees (and the government) is in no way a "private" dispute is sophistic.  PAGA gives employees no

21   choice but to pursue PAGA claims "on behalf of themselves and other aggrieved employees".  *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1141 (C.D. Cal. 2011) (recognizing that "the

22   PAGA statute indicates that [an] employee can pursue claims on behalf of others only if he also pursues claims on behalf of himself: the statute allows an aggrieved employee to bring a civil action 'on behalf of himself or herself <u>and</u> other current or former employees,' not on behalf of

23   himself <u>or</u> other employees.")  Indeed, the employee is in charge of pursuing and litigating the PAGA action; the employee controls what allegations are in the complaint; the employee defines

24   the group of employees whom he or she seeks to represent; and the employee can settle the PAGA claim without LWDA approval (but with binding effect on the state and the nonparty

25   employees whom the PAGA plaintiff represents).  Second, public disputes are waivable.  *Iskanian* compares a PAGA claim to a *qui tam* action, but *qui tam* actions are waivable.  *See U.S.*

26   *ex rel. Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230 (9th Cir. 1997) (dismissing *qui tam* action because plaintiff had released future *qui tam* claims as part of a settlement agreement).  In

27   any event, given the nature of a PAGA claim as explicated by the California Supreme Court, the waiver by one employee of the right to bring a representative PAGA claim does not bar either the

28   government or another employee from bringing such a claim.

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE No.3:14-cv-01620-AJB-WVG]

1    of representative PAGA claims.  Numerous federal district courts have held to the

2    contrary.[3]

3         Second, even under *Iskanian's* logic, the Sears representative PAGA waiver

4    here is permissible.  *Iskanian* discusses the mandated waiver of claims;  *i.e.*, a

5    waiver to which an employee must agree as a condition of employment.  See

6    *Iskanian*, 173 Cal. Rptr. 3d at 313 ("it is contrary to public policy for an

7    employment agreement to eliminate this choice altogether by **requiring** employees

8    to waive the right to bring a PAGA action before any dispute arises")(emphasis

9    added); at 316 ("Of course, **any employee is free to forgo the option of pursuing**

10   **a PAGA action**")(emphasis added); and at 319 ("Having concluded that CLS

11   cannot **compel** the waiver of Iskanian's representative PAGA claim")(emphasis

12   added).  But the Sears waiver is not mandated as a condition of employment.

13   Employees have the ability to opt out of the Sears arbitration agreement entirely,

14   and many do. Kaselitz Decl., at ¶¶ 25-27.

15

16   ───────────

[3]  *See, e.g.*, *Velazquez*, 2013 U.S. Dist. LEXIS 121400, at *19-*21 (PAGA claims arbitrable,

17   enforcing agreement at issue in instant case); *Appelbaum v. AutoNation Inc.*, No. SACV 13-
01927 JVS(RNBx), 2014 U.S. Dist. LEXIS 50588, at *32 (C.D. Cal. Apr. 8, 2014) ("waiver of

18   representative PAGA claims in an arbitration agreement does not render the agreement
unenforceable because concluding otherwise would undermine the FAA's policy of favoring

19   arbitration of claims"); *Miguel v. JPMorgan Chase Bank, N.A.*, CV 12-3308 PSG PLAX, 2013
WL 452418, at *10 (C.D. Cal. Feb. 5, 2013) ("Because a rule prohibiting arbitration of PAGA

20   claims would conflict with the FAA, PAGA claims are arbitrable"); *Morvant v. P.F. Chang's
China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) ("[T]he Court must enforce the

21   parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private
attorneys general"); *Luchini v. Carmax, Inc.*, CV F 12-0417 LJO DLB, 2012 WL 2995483, at *14

22   (E.D. Cal. July 23, 2012) ("Like other courts, this Court views PAGA as an obstacle to
enforcement of arbitration agreements governed by the FAA.  As such, this Court is not prepared

23   to preclude arbitration based on . . . PAGA claims."); *Coleman v. Jenny Craig, Inc.*, 11CV1301-
MMA DHB, 2012 WL 3140299, at *4 (S.D. Cal. May 15, 2012) ("[T]he arbitration agreements

24   are not unenforceable as unconscionable based on the inclusion of the class action waiver [and]
[t]he waiver does not . . . violate PAGA . . . ."); *Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d

25   1159, 1181 (S.D. Cal. 2011) (PAGA claim arbitrable and representative waiver enforceable);
*Valle v. Lowe's HIW, Inc.*, No. 11-1489 SC, 2011 U.S. Dist. LEXIS 93639, at *14 (N.D. Cal.

26   Aug. 22, 2011) ("To the extent that Plaintiffs argue that no PAGA claim is arbitrable, the Court
rejects this argument as unsupported by the law.  Plaintiffs' PAGA claim is a state-law claim, and

27   states may not exempt claims from the FAA"); *Nelson v. AT&T Mobility*, No. C10-4802, 2011
U.S. Dist. LEXIS 92290, at *11 (N.D. Cal. Aug. 18, 2011) ("*Concepcion* preempts California law

28   holding PAGA claim inarbitrable"); *Quevedo*, 798 F. Supp. at 1141(granting motion to compel
arbitration because "PAGA claim is plainly arbitrable").

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-cv-01620-AJB-WVG]

OHSUSA:753559501.1

1    The representative PAGA waiver must be enforced.

2   **V.     THIS ACTION MUST BE STAYED PENDING RESOLUTION OF THE ARBITRATION**

3

4    Defendants also move for an order staying the instant action pending

5   arbitration. Section 3 of the FAA directs that a court <u>shall</u> issue an order staying

6   judicial proceedings where an issue therein is referable to arbitration:

7           If any suit or proceeding be brought in any of the courts
           of the United States upon any issue referable to arbitration
8           under an agreement in writing for such arbitration the
           court in which such suit is pending, upon being satisfied
9           that the issue involved in such suit or proceeding is
           referable to arbitration under such an agreement, shall on
10          application of one of the parties stay the trial of the action
           until such arbitration has been had in accordance with the
11          terms of the agreement, providing the applicant for the
           stay is not in default in proceeding with such arbitration.
12

13  9 U.S.C. § 3.  As shown above, this Action is referable to arbitration.  Thus, a stay

14  of this Action is mandatory pending the outcome of the arbitration proceedings.

15  **VI.    <u>CONCLUSION</u>**

16          For the reasons stated above, Defendants request that the Court grant their

17  motion to compel arbitration, order the matter to binding individual arbitration, and

18  stay further judicial proceedings.

19

20  Dated:  July 29, 2014                JOSEPH C. LIBURT
                                        Orrick, Herrington & Sutcliffe LLP
21

22

23                                      By: s/ Joseph C. Liburt
                                        JOSEPH C. LIBURT
24                                      Attorneys for Defendants

25

26

27

28

OHSUSA:753559501.1

NOTICE OF MOTION AND MOTION TO COMPEL
ARBITRATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF
[CASE NO.3:14-CV-01620-AJB-WVG]