1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11  JENNIFER LUCERO and RAFAEL        )  Case No.: 14-cv-1620 AJB (WVG)
    SOLORZANO, individually and on   )
12  behalf of all others similarly situated,  )
                                      )  ORDER GRANTING MOTION TO
13                       Plaintiffs,  )  COMPEL ARBITRATION AND
    v.                                )  STAY ACTION
14                                    )
    SEARS HOLDINGS MANAGEMENT  )
15  CORPORATION, a Delaware           )
    Corporation; SEARS, ROEBUCK,     )
16  AND CO., a New York Corporation;  )
    and DOES 1-50, inclusive,         )  (Doc. No. 6.)
17                                    )
                         Defendants.  )
18  ─────────────────────────────────  )

19
20

    The matter before the Court is Defendants Sears Holdings Management Corporation

21  and Sears, Roebuck, and Co.'s motion to compel arbitration and stay the action (Doc. No.

22  6). Having fully and carefully considered the motion and opposition, the Court **GRANTS**

23  the motion and stays the action for the reasons set forth herein.

24  **I.    BACKGROUND**

25      **A.    Procedural Background**

26      On January 29, 2014, Plaintiffs Jennifer Lucero and Rafael Solorzano (collectively,

27  "Plaintiffs") filed a complaint, individually and on behalf of all others similarly situated, in

28  the Superior Court of California for the County of San Diego, Case No. 37-2014-00000431-

CU-OE-CTL. Lucero was employed by Defendants as an assistant store manager from February 2012 to April 2014. (Not. Remov. Ex. A ¶ 6 ("FAC"), Doc. No. 1-1.) Solorzano was employed by Defendants as an assistant store manager since September 2007. (*Id.* ¶ 7.) At all times during their employment with Defendants, Plaintiffs were classified as salaried employees exempt from overtime pay and legally required meal breaks. (*Id.* ¶¶ 6-7.)

On June 3, 2014, Plaintiffs filed their First Amended Complaint asserting five causes of action: (1) unfair competition; (2) failure to pay overtime compensation; (3) failure to provide accurate itemized wage statements; (4) failure to provide wage when due; and (5) violation of the Private Attorney General Act ("PAGA"). (FAC ¶¶ 55-104.) Plaintiffs seek relief in the form of restitution, unpaid wages, penalties under the Labor Code and Industrial Welfare Commission, injunctive relief, declaratory relief, and costs. (*Id.* at 40-41.)

On July 8, 2014, Defendants removed the action to this Court (Doc. No. 1) and on July 29, 2014, Defendants moved to compel arbitration and stay the action (Doc. No. 6). Plaintiffs filed an opposition on August 15, 2014, and Defendants later filed a reply. (Doc. Nos. 14-15.)

## B.   Factual Background

During the week of April 2, 2012, Defendants introduced an arbitration policy/agreement ("the Agreement") under which participating employees and Defendants each waived the right to pursue certain claims in court, and agreed instead to submit such disputes to binding arbitration. (Kaselitz Decl. ¶ 5, Doc. No. 6-2.) The Agreement provides:

> Under this Agreement, and subject to certain exceptions specified within the Agreement, all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court; including the right to have a jury decide the parties' claims. Also, this Agreement prohibits Associate and Company from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action or similar proceeding.**

14cv1620

1
2
3
4

**If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

5  (*Id.* Ex. A at 1, Doc. No. 6-4 (emphasis in original).)

6  Employees received the Agreement via training portals. (Kaselitz Decl. ¶¶ 3-9.) Prior

7  to September 14, 2012, employees participated in training and acknowledged their receipt

8  of employment policies using Defendants' "My Personal Information" ("MPI") online portal

9  and the former training system, the "Online Performance Training System." (*Id.* ¶ 6.)

10  Employees were required to complete a series of policy acknowledgments in the MPI portal,

11  including the Agreement. (*Id.* ¶ 9.) Once an employee clicks the red-colored link for the

12  Agreement acknowledgment, the employee is brought to a page with four links identified

13  as: (1) Arbitration Policy/Agreement (PDF); (2) Arbitration Policy/Agreement (Text); (3)

14  "Opt Out Form Action is required to protect your legal rights to sue the Company in court

15  and/or to participate in any way in a class action, collective action or representative action";

16  and (4) Acknowledgment receipt of the Arbitration Policy/Agreement. (*Id.* ¶¶ 10-11.) After

17  reviewing the Agreement and opt out form, employees acknowledge their receipt of the

18  Agreement by clicking on the "Acknowledge receipt of the Arbitration Policy/Agreement"

19  link. (*Id.* ¶ 12.) After clicking on the link, the employee receives a message:

20
21
22

**By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning to the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.**

23  (*Id.* ¶ 13 (emphasis in original).) To submit the acknowledgment, the employee must click

24  a "Yes" button, and then click "Submit." (*Id.* ¶ 14.)

25  Once an employee completes the acknowledgment in the MPI portal, the human

26  resources system is automatically updated to reflect the employee's receipt and acknowledg-

27  ment of the Agreement. (*Id.* ¶ 15.)

28  ///

14cv1620

Defendants hired Lucero on January 23, 2012, and Solorzano on September 18, 2000. (*Id.* ¶ 19.)   Plaintiffs received the Agreement as part of the 2012 launch of the new Agreement in the week of April 2, 2012. (*Id.* ¶ 20.) Lucero acknowledged receipt of and accepted the Agreement on April 11, 2012, and Solorzano acknowledged receipt of and accepted the Agreement on April 26, 2012, both in accordance with the procedure set forth above. (*Id.* ¶¶ 23-24; Exs. C & D.) Neither plaintiff revoked their acceptance of the Agreement within the 30-day window nor did either attempt to do so any time thereafter. (Kaselitz Decl. ¶ 26.)

Following the filing of this action, Defendants' counsel provided Plaintiffs' counsel with the Agreement and asked Plaintiffs to stipulate to individual arbitration, but Plaintiffs refused. (Liburt Decl. ¶ 2, Doc. No. 6-1.) Accordingly, Defendants ask this Court to compel individual arbitration. (Doc. No. 6.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commere. 9 U.S.C. § 2.   Pursuant to Section 2 of the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*.   The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." *Id*. § 4. Further, given the liberal federal policy favoring arbitration, the FAA "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).   Thus, in a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat. Ass'n*, 673 F.3d 947, 955-56 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

### III.   DISCUSSION

#### A.   Existence of a Valid Agreement

In opposing the motion to compel arbitration, Plaintiffs do not dispute that they signed the Agreement, or that their claims, other than the PAGA claims, are within the purview of the Agreement. (Pls.' Resp. 1, Doc. No. 14 ("The disputed issue in this motion is the PAGA waiver in Defendant's agreement.")). Rather, Plaintiffs assert that the Agreement is unenforceable as to the representative PAGA claims pursuant to the California Supreme Court's recent decision in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (Cal. 2014). Plaintiffs argue that, because the PAGA waiver is invalid and the Agreement states that the PAGA waiver is not severable, the entire Agreement is unenforceable. (*Id.* at 4.)

As an initial matter, the Court notes that the validity of the Agreement has been litigated in the Southern District of California. *See Velazquez v. Sears, Roebuck & Co.*, No. 13CV680-WQH-DHB, 2013 WL 4525581, at *1 (S.D. Cal. Aug. 26, 2013) (determining the claims raised were arbitrable and staying the case pending arbitration). The *Velazquez* court undertook a thorough and careful analysis of the Sears arbitration agreement and its conscionability. The court concluded the provisions were not substantively or procedurally unconscionable. (*Id.* at *4-7.) The court also addressed PAGA claims and concluded that pursuant to the FAA, the PAGA and class action waivers did not render the agreement substantively unconscionable (*id.* at *6) and were enforceable (*id.* at *7). Among other sources, the *Velazquez* court cited the United States Supreme Court case, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), which provided, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: the conflicting rule is displaced by the FAA."

In the present matter, Plaintiffs argue there are numerous reasons that the motion to compel should be denied, including that contractual waiver of PAGA claims is contrary to public policy, that the FAA does not preempt state law that protects substantive rights from forfeiture, and that the FAA does not bind non-governmental entities to private arbitration agreements, among others. As discussed, the arguments revolve around *Iskanian*.

14cv1620

1    In *Iskanian*, the state supreme court "conclude[d] that where . . . an employment
2  agreement compels the waiver of representative claims under the PAGA, it is contrary to
3  public policy and unenforceable as a matter of state law." *Iskanian*, 59 Cal. 4th at 384. The
4  supreme court reasoned that "[t]he government entity on whose behalf the plaintiff files suit
5  is always the real party in interest in the suit," and that an employee could not waive the
6  government's right to enforce the Labor Code via representative PAGA claims. *Id.* at 382.
7  Thus, the supreme court determined that under California law, an employee's right to bring
8  a representative PAGA claim is not waiveable and therefore any purported waiver in an
9  arbitration agreement is unenforceable as a matter of state law. *Id.* at 383-84. The *Iskanian*
10  decision also discussed the FAA, with the supreme court determining that the rule against
11  waiving representative PAGA claims is not preempted by the FAA. *See id.* at 385, 388-89.

12    The Court notes that it is not bound by the state supreme court's interpretation of
13  federal law. *Einardt v. Stone*, No. C-96-2111 MHP, 1996 WL 532114, at *5 (N.D. Cal. Sept.
14  16, 1996) ("Although a federal court may find state court interpretations of federal law
15  instructive, federal courts are the final arbiters of federal law and are not bound by state
16  court decisions interpreting a federal statute."). Thus, although Plaintiffs rely heavily on
17  *Iskanian* and the cases cited in that opinion,[1] this Court is not bound by the state supreme
18  court's determination that the FAA does not preempt the state's rule that arbitration
19  agreements are unconscionable if they waive an employee's right to bring a representative
20  PAGA claim. As other cases have demonstrated, the FAA preempts certain rules that
21  classify some arbitration agreements as unconscionable. *See, e.g.*, *Concepcion*, 131 S. Ct.
22  at 1753 (holding that a California rule was preempted by the FAA and noting that the rule
23  was preempted by the FAA because it "stands as an obstacle to the accomplishment and
24  execution of the full purposes and objectives of Congress" (citation and quotation marks
25  omitted)). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and
26  enforceable, save upon such grounds as exist at law or in equity for the revocation of any

27
28    [1] *E.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

14cv1620

contract." 9 U.S.C. § 2. Accordingly, arbitration agreements may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (internal quotation marks omitted). Notably, however, even "a doctrine normally thought to be generally applicable, such as duress or . . . unconscionability" can be impermissibly "applied in a fashion that disfavors arbitration." *Id.* at 1747.

Several other federal courts have recently faced the issue presented here, and have determined that the rule against representative PAGA claim waivers set forth in *Iskanian* treats arbitration agreements disfavorably. *See Mill v. Kmart Corp.*, No. 14-CV-02749-KA-W, 2014 WL 6706017, at *7 (N.D. Cal. Nov. 26, 2014) (discussing substantive unconscionabilty and providing that despite *Iskanian* and in accordance with *Concepcion*, the FAA preempts California's rule against PAGA waivers); *Langston v. 20/20 Companies, Inc.*, No. EDCV 14-1360 JGB SPX, 2014 WL 5335734, at *8 (C.D. Cal. Oct. 17, 2014) (concluding that "the FAA preempts California's rule against arbitration agreements that waive an employee's right to bring representative PAGA claims"); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *12-13 (C.D. Cal. Oct. 7, 2014) (noting that "numerous federal courts have determined that the FAA preempts California's rule prohibiting waiver of representative PAGA claims" and "agree[ing] and adopt[ing] the reasoning of these cases"); *Ortiz v. Hobby Lobby Stores, Inc.*, No. 2:13-cv01619, 2014 WL 4691126, at *11 (E.D. Cal. Oct. 1, 2014) ("It is clear that the majority of federal district courts find that PAGA action waivers are enforceable because a rule stating otherwise is preempted by the FAA and *Concepcion*. As such, this Court holds that representative PAGA waivers are enforceable."); *Fardig v. Hobby Lobby Stores, Inc.*, No. SACV 14-00561 JVS, 2014 WL 4782618, at *4 (C.D. Cal. Aug.11, 2014) ("Even in light of *Iskanian*, the Court continues to hold that the rule making PAGA waivers unenforceable is preempted by the FAA. There is nothing in *Iskanian* that persuades the Court otherwise, and the Court is not bound by the California Supreme Court's understanding of federal

1   law."). The *Iskanian* court concluded that an employee's agreement not to bring a

2   representative PAGA action is contrary to public policy if it takes place before any dispute

3   arises, but nevertheless explained that, after a labor dispute arises, an employee is free to

4   choose not to bring a representative PAGA claim. *See Iskanian*, 59 Cal. 4th at 383. As one

5   federal court recently explained:

6       Thus, although the [*Iskanian*] court asserts that the basis for holding represen-
        tative PAGA claim waivers unconscionable is that an employee cannot waive
7       a right that properly belongs to the government, the court nevertheless
        acknowledges that an employee may actually sometimes waive the govern-
8       ment's right to bring a PAGA claim. *See id.* That inconsistency illuminates the
        fact that, it is not an individual's ability to waive the government's right that
9       drives the court's rule, but rather the [*Iskanian*] court's general disfavor for
        pre-existing agreements to arbitrate such claims individually.

10  *Langston*, 2014 WL 5335734, at *7. This Court agrees.

11      Plaintiffs discuss the United States Supreme Court's decision in *Waffle House* in

12  support of their assertion that an individual cannot waive the government's interest in

13  litigating PAGA claims. (Pls.' Resp. 11, 18); *Waffle House*, 534 U.S. at 279. As discussed

14  by other federal district courts, *Waffle House* held that an employee's arbitration agreement

15  could not prevent the EEOC from bringing suit against the employer for labor law violations

16  with respect to the employee. *Id.* at 294; *see also Langston*, 2014 WL 5335734, at *7. The

17  *Waffle House* EEOC suits differ from agreements to arbitrate PAGA claims on an individual

18  basis. Notably, in EEOC actions, the EEOC controls the litigation, but in PAGA claims, the

19  employee is the named plaintiff and directs the litigation. *See Langston*, 2014 WL 5335734,

20  at *7 (citing *Fardig*, 2014 WL 4782618, at *4).

21      As discussed, Plaintiffs set forth numerous arguments in light of *Iskanian* in support

22  of its various attacks on the Agreement. The Court has carefully reviewed the authorities

23  and arguments and is unconvinced of their merit. Instead, the Court reaches the same

24  conclusion as several other courts on this matter—the FAA preempts California's rule

25  against arbitration agreements that waive an employee's right to bring representative PAGA

26  claims. As such, the Court is satisfied that the Agreement is valid despite the challenges

27  ///

28

1  lodged by Plaintiffs and thus moves to the next step of the requisite analysis regarding

2  arbitration.[2]

3  **B.    Agreement Encompasses the Disputes at Issue**

4  Defendants assert that the Agreement encompasses the disputes at issue and Plaintiffs,

5  outside of their attacks regarding the PAGA, do not dispute Defendants' assertion. The

6  Court also agrees. Plaintiffs bring various claims related to their employment with

7  Defendants, which are clearly in the purview of the Agreement.

8  Having satisfied its burden, Defendants have established that a valid agreement

9  encompasses the disputes at issue. As such, the Court grants the pending motion as to

10 arbitration and compels individual arbitration of Plaintiffs' claims.

11 **IV.   REQUEST FOR STAY**

12 Defendants also request that the action be stayed. The FAA provides that upon

13 determining that a matter is referable to arbitration under an agreement, a court must stay

14 the pending matter. 9 U.S.C. § 3. Defendants have moved to stay this action pending the

15 outcome of arbitration proceedings. As discussed herein, the Court finds that the claims

16 raised by Plaintiffs are referable to arbitration pursuant to the Agreement. As such, the Court

17 stays this matter pursuant to 9 U.S.C. § 3.

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26

27 [2] Having determined the Agreement's validity in light of the FAA and despite

28 *Iskanian*, the Court need not address Plaintiffs' argument that the opt-out fails to make the Agreement enforceable. (*See* Pls.' Mem. 19.)

1  **V.     CONCLUSION**

2          For the foregoing reasons, Defendants' Motion to Compel Arbitration and Stay the

3  Action (Doc. No. 6) is **GRANTED** and this case is hereby **STAYED** pending arbitration.

4  The Clerk of Court is instructed to administratively close this case without prejudice to any

5  party moving to have the case reopened for good cause.

6

7  IT IS SO ORDERED.

8

9  DATED:  December 2, 2014

10                                                          Hon. Anthony J. Battaglia
                                                            U.S. District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28